Commonwealth *v.* Nestor, Appellant.

Argued April 8, 1957. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*Arthur L. Goldberg,* with him *John H. Bream,* for appellant.

*Martin H. Lock,* Assistant District Attorney, with him *H. F. Dowling,* District Attorney, for appellee.

OPINION BY HIRT, J., June 11, 1957:

Two separate indictments charging sodomy, were consolidated for trial and the defendant was convicted on both of them. These appeals are from the judgments of sentence imposed. The defendant contends that there is error in the refusal of new trials. The cases were well tried and there was not even a general exception to the court's charge. The motions for new trials contain the usual stereotyped general averments and nothing more. Under the Rules of Court of Dauphin County, as well as by the general law, defendant was obliged to be specific in the assignments of errors of fact or of law in seeking new trials. He nevertheless rested upon the general averments of his petition although granted an additional period of 30 days in which to file specific reasons for new trials. The lower court however did not restrict the defendant's argument by enforcing the rule of *Dugan et al. v. McGara's Inc.*, 344 Pa. 460, 465, 25 A. 2d 718, and neither shall we. We shall discuss the four questions involved as stated by the defendant regardless of whether in strictness they are properly before us.

The defendant complains of the action of the trial judge in consolidating the two indictments for trial, and of the refusal to sequester the witnesses. The consolidation of indictments charging separate and distinct offenses is largely within the discretion of the trial court and where the indictments, as here, are closely related, such consolidation will not furnish grounds for reversal unless the defendant has been prejudiced thereby. *Commonwealth v. Krzesniak*, 180 Pa. Superior Ct. 560, 567, 119 A. 2d 617; *Commonwealth v. Ackerman*, 176 Pa. Superior Ct. 80, 85, 106 A. 2d 886. As to ordering sequestration of the witnesses a trial judge in this State clearly has that power. *Commonwealth v. Principatti*, 260 Pa. 587, 598,

104 A. 53. But whether witnesses shall be excluded from the courtroom, except when testifying, is also a matter within the sound discretion of the trial judge. *Commonwealth v. Sloat*, 298 Pa. 10, 147 A. 834; *Commonwealth v. Turner*, 371 Pa. 417, 426, 430, 88 A. 2d 915. There was no abuse of discretion here in either respect since the defendant was not prejudiced by the refusal of separate trials nor the refusal to sequester the witnesses, as a review of the record will demonstrate.

The charge in each indictment was sodomy under §501 of the Act of June 24, 1939, P. L. 872, 18 PS §4501. Indictment Number 12 involved the charges of defendant's homosexual relations with one Thomas Hoover, on three occasions; Bill 13 involved five acts of sodomy committed by the defendant within the statutory period with one William Dietrich. Consideration of the defendant's contention that the verdicts of the jury are against the weight of the evidence, involves a review of the credible testimony (with some violence however to the sensibilities) somewhat in detail.

In the light of the verdict (*Commonwealth v. Schuster*, 158 Pa. Superior Ct. 164, 44 A. 2d 303) these are the material facts which we must accept: At the time of the trial in January 1956 Hoover was 18 years old. He had first met the defendant about three years before when the defendant came along on his horse and stopped to talk to him. Some time later the defendant picked him up in his automobile and took him home. In June 1953, while Hoover was waiting for a ride one morning the defendant, with one Joseph Schmick (a known sodomist, who now is serving a sentence in a penal institution) in his car, offered to take Hoover to the farm where he was working. On the way Schmick said to the defendant: "You ought to take this guy out, he is pretty good." The defendant

asked Hoover if he would go out with him and he said he would. Hoover next saw the defendant in the town of Lykens in front of Trotter's Restaurant about a week later when the defendant drove up in his car and invited Hoover and five or six other boys, who were hanging around, to go with him to a drive-in theatre in Pottsville. He paid for their admission. After the show he took Hoover to a restaurant. On the way back to Lykens the defendant, with Hoover's consent, committed sodomy upon him. The second occasion was a week later when defendant drove up to the same restaurant and invited Hoover and one Pat Kirvin to go to a movie in Harrisburg. Again he paid their way. On their return, Kirvin left them in Lykens and the defendant then drove to Romberger's field on a nearby farm, when he turned his lights off and parked his car in some bushes. There defendant, again with Hoover's consent, committed sodomy upon him after which the defendant gave him two dollars and drove him home. Hoover next saw the defendant in July 1954 when he and "a bunch of guys" went for a ride in Nestor's car. The day before Christmas, 1954, the defendant took Hoover to a clothing store where he bought him a complete outfit. Hoover testified that he next saw the defendant in the evening of January 15, 1955 but he later corrected the date to January 1st which he fixed because he remembered that on that day he had reported, as a probationer out of the juvenile court, to the State Police in Lykens. (He too was a young sodomist, although the defendant was not responsible for corrupting him in the first instance). Again, at the same restaurant the defendant picked him up and took him for a ride. Outside the town the defendant parked in some bushes at the roadside. In the back seat of the car he again committed sodomy upon Hoover for the third time and the defendant again gave him two dollars.

On the charges of Bill 13 William Dietrich who then was 20 years old testified that he had been brought to court for the trial from the Eastern Penitentiary where he was serving a sentence. He too had been a known sodomist. He stated he had known the defendant since the summer of 1950 when he worked in defendant's stable taking care of his horses. In late June of 1950 the defendant called him into the hayloft of the barn and he testified that there (we need not refer to the revolting details) the first act of sodomy was committed with the defendant. The second act occurred under similar circumstances about a month later. Sodomy was committed by these two for the third time "around Easter of 1951" and on two later occasions in Nestor's barn in the summer of 1951. In August 1952 the defendant invited Dietrich to his bedroom in his home and committed sodomy with him there. The final act of sodomy with Dietrich occurred in July, 1954, in Romberger's field. The last five of the above acts were committed within the statutory period.

From necessity a conviction of sodomy generally must rest on the testimony of the victim or accomplice alone. Cf. *Com. v. Allabaugh,* 162 Pa. Superior Ct. 490, 58 A. 2d 184; *Com. v. Sam Beati and Frank Burrell,* 86 Pa. Superior Ct. 567; *Com. v. Dong Lee,* 67 Pa. Superior Ct. 168. Hoover in the one case and Dietrich in the other were both accomplices and acknowledged sodomists. However there is no rule of law which invalidates a conviction on the uncorroborated testimony of either of them. Cf. *Com. v. Morrison,* 157 Pa. Superior Ct. 366, 43 A. 2d 400. It is conceded that Judge SOHN in protecting the rights of the defendant on this phase of the case, as in all other respects, adequately admonished the jury to consider the corrupt source of the testimony of these accomplices and scrutinize their

testimony carefully.[1]   Cf. *Commonwealth v. Darnell,*
179 Pa. Superior Ct. 461, 465, 116 A. 2d 310.

There was corroboration of each of these witnesses
in the circumstances.   Defendant was a man of good
family and affluent financial circumstances.   He was
a college graduate, 27 years old at the time of the trial.
His education and cultural background was far above
the average.   And yet his frequent associates were
Hoover, 9 years his junior who quit school at the ninth
grade, and Dietrich, 8 years younger than the defend-
ant, both of them admitted sodomists—one on proba-
tion and the other in the penitentiary at the time of
these trials.   Joseph Schmick, also a sodomist was an-
other of his associates.   Certainly, defendant's associa-
tion with these three persons, so far out of his class,
was a factor for the jury to consider in weighing the
testimony.   Moreover, no possible motive has been sug-
gested for false testimony from either Hoover or
Dietrich.   Cf. *Commonwealth v. Bowles,* 163 Pa. Su-
perior Ct. 123, 128, 60 A. 2d 362.   The defendant ad-
mits corresponding with Dietrich and there is a letter
in evidence written by the defendant to him dated
March 31, 1953.   There is nothing suggestive in the

---

[1] Judge SOHN in part said to the jury: "Now, it has been ar-
gued to you here—and I don't want to forget this—that the testi-
mony of the Commonwealth in this case comes from a polluted
source.  It does.  It comes out of the mouths of two self-confessed
and sentenced sodomists.  That is William Dietrich and Thomas
Hoover.  And you should be very careful in convicting on the tes-
timony of such witnesses.  It should make you cautious and care-
ful in your deliberations; and you should be satisfied beyond a
reasonable doubt of the guilt of this defendant if you rely upon
the testimony of those two men.  Now, by what I have said I don't
mean to say that you must throw out of the case or out of your
consideration the testimony of these two Commonwealth witnesses,
but you must scrutinize their testimony very carefully before you
come to a conclusion.".

letter however but defendant signed it: "Your pal, Bud".

In his third statement of questions involved, defendant complained of the admission of the testimony of State Police officers Jenkins and Corbett with respect to what occurred when defendant appeared with his bondsman, by pre-arrangement in the office of a justice of the peace *before he was arrested.* The correct answer to the question also lends corroboration to the testimony of the accomplice Hoover. In the office of the justice of the peace before defendant's arrest, Officer Jenkins pointed to defendant and asked Thomas Hoover who was there if this was the Robert Nestor who had committed sodomy upon him. Hoover replied that he was. To this accusation of the crime the defendant said nothing although the statement made in his presence called for a denial. This was not a judicial proceeding—the preliminary hearing before the justice came long after. The fact therefore that defendant did not then deny the accusation, according to the testimony of the two State Police officers, was admissible on the question of his guilt under the rule of *Commonwealth v. Vallone,* 347 Pa. 419, 421, 32 A. 2d 889. Cf. also, *Commonwealth v. Dodson,* 174 Pa. Superior Ct. 421, 101 A. 2d 411; *Commonwealth v. Sam Beati and Frank Burrell,* supra.

Finally, the appellant contends that there was error in the admission of testimony of officer Corbett as to a conversation which he overheard. Dietrich had testified that in the act of sodomy he observed an abnormality in the defendant's genital organ indicating to him that there were two openings in the end of it. To discredit Dietrich defendant's counsel arranged for an examination of the defendant by Dr. L. A. Hoffman in the men's room of the courthouse. State Police officer J. J. Corbett was in a toilet enclosure at the time

and he testified that he heard Mr. Goldberg, defendant's counsel, tell the doctor that there was testimony at the trial then in progress that there were two openings; and that Dr. Hoffman said: "In looking at it, it appears as though two. However, there is only one opening." In surrebuttal the defendant called Dr. H. K. Petry who after a brief examination of defendant stated that there was only one opening in the defendant's organ. On cross-examination however he said: ". . . there is a sac, a slight sac above that might be interpreted as another opening. I think it might have been possible for an uneducated person, but anyone with experience would know it is a perfectly normal thing." The testimony of officer Corbett as to what Dr. Hoffman said in the presence of the defendant after examining him was clearly admissible. And this testimony was most important going to the credibility of the witness Dietrich. There would have been no opportunity so far as disclosed by this record, for Dietrich to have observed defendant's alleged abnormality in the above respect except in the act of sodomy.

Defendant was fairly tried in every respect, and his guilt was clearly established.

Judgment of sentence affirmed in each case and it is ordered that the defendant appear in the court below at such time as he may be there called and that he be by that court committed until he has complied with the sentence imposed or any part of it which had not been performed at the time the appeal in this case was made a supersedeas.