Commonwealth *v.* Chisena, Appellant.

Argued March 24, 1960. Before RHODES, P. J., GUNTHER, WRIGHT, WOODSIDE, ERVIN, WATKINS, and MONTGOMERY, JJ.

*Morris Passon*, for appellant.

*Jacques H. Fox*, District Attorney, for Commonwealth, appellee.

OPINION BY ERVIN, J., April 13, 1960:

The defendant was found guilty of assault with intent to ravish and burglary. He was found not guilty on the rape charge. After disposition of his motions for a new trial and in arrest of judgment he was sentenced. Defendant appealed.

We must accept as correct the testimony submitted by the Commonwealth as well as the reasonable inferences which may properly be drawn therefrom: *Com.*

228

*v. Nestor,* 183 Pa. Superior Ct. 350, 353, 132 A. 2d 369. In the light of the verdict these are the material facts which we must accept: Prosecutrix's husband left his home at 323 Westmont Drive, Collingdale, Delaware County, for work at 5:10 a.m. on January 9, 1959; at 5:15 a.m. prosecutrix was awakened by a man, holding a knife some four inches from her, and shaking her awake; as the intruder leaned over her, she saw the shape of his face, his coloring, his build and later discovered he was wearing a leather jacket; the only light in the room was reflected from a clock radio located near the bed; her little boy, four years of age, had climbed into his parents' bed during the night; the intruder told her not to scream and to keep the boy quiet or he would kill; he ordered her out of bed and downstairs, he asked for money and was told there was none; in the living room she saw a flashlight for the first time, it was on and shining on the floor; the intruder told her to sit in a chair, then took her by the shoulder and pushed her down; he exposed himself indecently to her, talked to himself and rambled on saying filthy words; he asked her to do an indecent act and when she refused he threw her on the floor, just before that he pulled her nightgown off her; he placed the lighted flashlight near her left hip and positioned himself on top of her, between her legs; she tried to hold him off, pushing his chest, she was aware of his leather jacket; the flashlight was off at that time; suddenly he jumped up again, asked her if she had any money, told her not to dare call the cops, and ran down the cellar; the next thing she knew her little boy was in her arms, he had been coming down the steps; she ran upstairs, grabbed the baby's rifle and used it to bang on the wall; she recalls yelling that someone was in the house with a knife trying to kill her baby; the next door family corroborated this testimony of her pounding on the party wall.

The appellant argues that this evidence was insufficient to sustain a conviction. His principal argument in this connection is that there was not sufficient time for defendant to have done the acts which prosecutrix says he did. Her testimony was that she was awakened at 5:15 a.m. by the defendant and that it was 5:25 a.m. when she pounded on the wall to awaken the neighbors. At this time the defendant had left the house. Appellant argues that this would allow only five or six minutes to do what prosecutrix says he did. Eight or nine minutes would be more nearly the time between the time when prosecutrix was first awakened and the time when defendant left her on the first floor. In our judgment the acts could have been done in that period of time.

Appellant also argues that the identification evidence was weak. Prosecutrix testified that the light from her clock radio was sufficient to enable her to view the intruder's face, his coloring and his build. She saw his face again in the living room when he placed the lighted flashlight near her hip. The intruder talked to her. On the afternoon of the incident she identified him in the home of a neighbor. Later she had an opportunity to identify him at the Court House. She gave the details to the officer when she answered: "Well, his shape face in general, his nose and his chin; . . . and even to the coloring, I could see the coloring of his face where the light hit it." She also identified the defendant by his voice. Under this evidence the question of identification was clearly for the jury.

The court's charge on alibi was in accord with *Com. v. Bonomo,* 396 Pa. 222, 151 A. 2d 441, and was without error. The credibility of the alibi evidence was also for the jury.

Appellant has also raised several additional questions which we deem it unnecessary to answer for the

reason that they were never raised in the court below.

We have carefully reviewed the entire record and we are convinced that the appellant received a fair trial and one that was free from error.

Judgment of sentence affirmed.

---

DISSENTING OPINION BY MONTGOMERY, J.:

I have dissented in this case and would arrest the judgment against defendant for the reasons assigned in defendant's motion: viz., the weakness of the testimony of the Commonwealth on the commission of the crimes and on the identification of defendant; and, also, on the strength of the alibi testimony.

Certain facts are firmly established, viz., the victim's husband left home at 5:10 a.m.; prosecutrix was awakened by a man in her second floor bedroom at 5:15; her room was dark except for the illumination from a clock radio (not described as a light, probably because it was not a light but merely a radiant dial; however, generally a radio light is on only when the radio is playing); at 5:21 the intruder left via the cellar; and at 5:25 prosecutrix pounded on the wall to awaken her neighbors and reported that someone was trying to kill her baby (not that she was being assaulted and robbed). The prosecution also developed that defendant was picked up at 5:30 in front of his home by John Wilson, Sr., who regularly provided him with transportation to his employment as a driver for Bond Bread Company. Mr. Wilson testified further, that at the time he met defendant, the defendant was attired in his regular uniform and was fully composed.

Between 5:15, when she was awakened, and 5:20, when the intruder left, or 5:25, when she pounded on the wall, prosecutrix describes the following incidents as occurring: The intruder awakened her, and when her

son awakened he cautioned her to keep quiet and to quiet her son; he threatened her with a knife and also threatened her son with it; he asked her for money; he ordered her downstairs, walked downstairs with her, cautioned her to look out for and not trip over a wagon at the landing where he lit his flashlight for the first time and directed its glare to the floor (he thus appears to have been a polite and considerate intruder); they entered the living room, where he pushed her into a chair (since this was all in the dark, it indicates that he knew his way around the place); he exposed himself, solicited her to commit sodomy while talking and using rambling filthy words; on her refusal, he pulled her from the chair, took off her nightgown (without tearing it), told her to lie on the floor, lit his flashlight again and placed it near her hip, had sexual intercourse with her, and discussed the effects of it with her; she then resisted him; he jumped up, asked for money, dared her to call the "cops" and left via the cellar; she then ran upstairs, found her baby's rifle on the stairs (presumably still in the dark), went into her bedroom and pounded on the walls.

The trial judge recognized the short period of time outlined by the prosecutrix and told the jury all the above was completed in six minutes (not eight or nine as calculated and stated in the majority opinion filed in this case).

The additional facts established with reference to the defendant are that from the home of the prosecutrix to his home requires three minutes walking time and that a call was made from his home to the Wilson home at 5:28 a.m. to check on his ride. On this basis, if he were the intruder, he would have had nine minutes, from 5:21 to 5:30, to leave prosecutrix in her living room, go out through the cellar, walk three minutes to his home, go into his home, take off his leather jacket, put on his uniform coat, if not his entire uniform, make

a telephone call, get out onto the sidewalk, and meet his "ride."

In my opinion, the foregoing is so incredible and impossible that the jury should not have been permitted to pass on it. It is even more fantastic than the evidence in *Commonwealth v. Brown*, 184 Pa. Superior Ct. 494, 136 A. 2d 138, and *Commonwealth v. Balles*, 160 Pa. Superior Ct. 148, 50 A. 2d 729, which this Court refused to accept. In fact, in our present case the jury did refuse to accept that part of the testimony relating to the actual rape and acquitted him on that charge.

However, there are other and even stronger reasons for setting aside this sentence. The evidence of identification alone was insufficient to satisfy a jury beyond a reasonable doubt. It depended on the testimony of the prosecutrix and the finding of a leather jacket in defendant's home. Even in this connection, the jacket found there bore a fur collar, whereas, prosecutrix made no mention of such trimming. Many persons wear leather jackets in January, when this occurred, so that the finding of defendant's jacket should not have been given so much weight as it apparently received.

The prosecutrix had never seen the defendant before this time. From whatever illumination existed in her bedroom she said that she could only see the shape and color of his face, and his build. The only time there was any other light was at the landing when he played the rays of his flashlight on the floor for an instant, and again when he placed the light on the floor shining into her face. When she charges him with having sexual relations with her, the light was off. She could not identify the leather jacket. Although she testified he talked in a rambling way, she undertook to identify him also by his voice. Her testimony at the trial evidences uncertainty: "*Well*, his shape face in general, his nose and his chin; I told them all exactly the same shape face he had." When asked if she had given the same de-

tails to the police, she said "To the nose and chin, yes, and the longness of the face, and even to the coloring, I could see the coloring of his face where the light hit it." This is far from sufficient identification, in my opinion. But an important point is that she made her identification first when defendant was brought to her on the afternoon of the alleged assault. At that time she confronted him in company with two detectives and no other possible suspects. Likewise, when a "standup" was held to enable her to identify him formally, it was after the original identification and in company with other people she had seen and heard before, since they were in the same room with her before the "standup" was held. Under these circumstances, it was all predetermined whom she would identify and nothing was accomplished by the proceeding Although slight evidence on identity, of necessity in many cases, is submitted to juries with proper caution and with particular caution in sex perversion cases, *Commonwealth v. Kettering*, 180 Pa. Superior Ct. 247, 119 A. 2d 580, it is in the present case, at most, an opinion of a person who was previously unacquainted with the subject and who had very little means of forming an opinion due to darkness existing during almost all of the incident.

When the uncertainties of identification are considered with the fantastic evidence on the commission of the crimes and the strong alibi evidence given by defendant's brother and other members of the family, who stated defendant had been awakened at 4:45 and that they were in the house with him until he departed for work at 5:30, together with the testimony of Mr. Wilson, that he met him at 5:30, I feel strongly that the uncertainty in the minds of the jury which caused them to acquit on the rape charge should be extended and applied to the other charges as well.

Another factor not previously mentioned which causes more doubt is that the flashlight and knife used

by the intruder were not found on the defendant. If he disposed of them, the question might be asked why he did not also conceal the leather jacket that he wore rather than place it conspicuously on a chair in his home.

Although it is not part of the record of the court below, it is disclosed by the briefs that the defendant was subjected to a sodium pentothal (lie-detector) test, the results of which were negative. Although technically it should play no part in this Court's consideration of the case, nevertheless, feeling as I do about this matter, I feel compelled to make mention of it, in justice to the defendant.