## Commonwealth v. Simmons

*Bruce Lukas*, for Commonwealth.

*George O'Connell*, Public Defender, for defendant.

SCIRICA, J., March 23, 1973.—From September 2, 1970, to September 5, 1970, a curfew was in effect in the Borough of Norristown from 9 p.m. to 6 a.m. because of disturbances.

At approximately 3:30 a.m. on September 3, 1970, defendant, Robert L. Simmons, drove a 1964 Chevrolet, Pennsylvania Registration No. 40-H-148, west on Airy Street, and with tires squealing, turned north on DeKalb Street in the Borough of Norristown, Pa. A few feet past said intersecting streets, on the northwest corner of which is situated Borough Hall, defendant's vehicle came to sudden halt and the occupant therein fired three pistol shots in a westerly direction toward patrolman Charles Mack; said police officer was standing beside a WCAU motor vehicle parked along the northerly curb of Airy Street facing west in front of Borough Hall, giving two TV newsmen seated therein directions to Philadelphia. Defendant's vehicle then hastily sped away north on DeKalb Street; Officer John J. Murray, Jr., had been parked in an unmarked police car facing north on DeKalb Street, saw the shooting, and took up immediate and hot pursuit of the fleeing vehicle, firing a shot at it before it turned west on

Marshall Street. At a location almost directly behind the Montgomery County Prison, Officer Murray observed the occupant of the fleeing vehicle throw something out of the driver's window; said object causing sparks as it made contact with the sidewalk. Officer Murray fired a second shot at defendant's car and then it turned north on Church Street, at which time the occupant turned off his lights. The pursuing officer fired twice more at defendant's auto before it finally drifted into a parked automobile at the corner of Oak and Church Streets. Following a scuffle with defendant, the only occupant of the car, Officer Murray placed him under arrest and informed him of his constitutional rights. Officer Murray then proceeded to search defendant's vehicle, the results of which produced one spent 45-calibre cartridge.

Later that morning, as a result of Officer Murray's description of the route of travel, a search party went to Marshall Street, and Sergeant Frank Ciaccio found a 45-calibre automatic pistol and clip, which were positioned separately on the sidewalk behind the prison.

Richard George Dewees, also a police officer, who had been standing on the Borough Hall steps at the time of the shooting incident, found a second spent 45-calibre cartridge located approximately 10 inches from the westerly DeKalb Street curb, where the shooting took place.

At approximately 7 a.m., Detective Stephen Shaw made a search of defendant's "Chevy" car and found a third 45-calibre spent cartridge. About the same time, a 45-calibre "slug" was found by another Norristown policeman, LeRoy C. Roberts, Jr., in the area where the TV car had been parked.

A preliminary hearing was held March 13, 1972; on

September 19 and 20, 1972, a grand jury approved five bills of indictment consisting of six charges:

1. Criminal Action No. 323-72—attempt with intent to kill;

2. Criminal Action No. 324-72—obstructing an officer in making an arrest;

3. Criminal Action No. 325-72 was a two count indictment consisting of:

Count 1—wantonly pointing a firearm

Count 2—wantonly discharging a firearm

4. Criminal Action No. 326-72—violation of the Firearms Act; and

5. Criminal Action No. 327-72—driving without lights on to avoid identification or arrest.

After a jury trial from September 19 to 26, 1972, defendant was found guilty of all charges. Competent and capable defense counsel was present throughout the proceeding. However, at the close of the Commonwealth's case, defendant discharged his public defender; nonetheless, at the request of the court, counsel remained in the courtroom for the purpose of rendering legal assistance to defendant. (Note compliance with Pennsylvania Rule of Criminal Procedure 318(a)). Defendant then presented and defended his own case.

Motions for new trial and arrest of judgment were filed. Defendant advised the court he did not wish to argue the motions nor file a brief, and desired to be sentenced. A public defender was in the courtroom to assist defendant. The court denied his motions for new trial and arrest of judgment. Defendant was then sentenced as follows:

"CA No. 323-72: To undergo imprisonment for not less than two (2) years nor more than seven (7) years in such State Correctional Institution as shall be designated by the Deputy Commissioner for treat-

ment, Bureau of Corrections, and sent to the Correctional Diagnostic and Classification Center at Graterford for this purpose. Costs are placed on the County. Sentence to be consecutive to minimum sentence now being served.

"CA No. 324, CA No. 325, Count 1, CA No. 325, Count 3, CA No. 326, and CA No. 327-72; sentences suspended by reason of sentence on CA No. 323 of 1972. Costs on the County."

Thereafter, defendant petitioned the court on January 26, 1973, to vacate and reconsider sentence in propria persona pro se.

On January 31, 1973, defendant filed the appeal to the Superior Court.

By order of the Superior Court dated January 31, 1973, this court was directed to appoint counsel to represent defendant in his appeal. On February 7, 1973, by order of this court, the public defender was appointed.

Defendant advanced the following reasons for appeal to the Superior Court, and, hence, this opinion:

1. The verdict is against the evidence;

2. The verdict is against the weight of the evidence;

3. The verdict is against the law; and

4. The defendant has been incarcerated since May 1971, and because of the "community-oriented programs" which he has been involved with during such confinement, his sentence should be vacated and reconsidered.

## DISCUSSION

The first three standard reasons given for appeal bear no merit in this case.

All of the evidence contained in the Commonwealth's exhibits 1-16, the pertinent facts, surrounding circumstances and events, and witnesses exposed to the

jury permitted that collective body, as triers of fact, to determine the identity of defendant as the sole individual who perpetrated the aforementioned crimes on September 3, 1970, at approximately 3:30 a.m. at the corner of Airy and DeKalb Streets (adjacent to Borough Hall) in the Borough of Norristown. A firearms expert testified that the three spent cartridges and one slug were shot from the revolver found in the route of escape.

At pages 25 and 102 of the notes of testimony, Officer Murray identified defendant as the black male individual whom he chased in hot and visible pursuit; that he never lost sight of the fleeing automobile (a 1964 Chevrolet, Pennsylvania Registration No. 40-H-148) and its occupant from the time the shooting commenced until the actual arrest several minutes later. Murray's testimony, in the opinion of this court, was representative of unevasive credibility, as was the testimony of all the Commonwealth's witnesses in this particular case; such was reflected in the jury's verdicts of guilty on all six charges against defendant.

Following a verdict of guilty, the Commonwealth's evidence, direct and circumstantial, together with all reasonable inferences therefrom are to be taken as true in determining the validity of the conviction: Commonwealth v. Petrisko, 442 Pa. 575 (1971); Commonwealth v. Rankin, 441 Pa. 401 (1971); Commonwealth v. Williams, 96 Montg. 119 (1972).

A new trial will not be granted if there has been a fair trial and the verdict follows the weight of the evidence: Commonwealth v. Wheeler, 200 Pa. Superior Ct. 284 (1963); Commonwealth v. Jerko, 98 Pa. Superior Ct. 34 (1930); Commonwealth v. Devlin, 13 Chester 160 (1965).

In determining whether to grant a new trial, the test to be applied by the trial judge is not whether he

would have assented to the verdict if he had been a juror, but whether he feels that an injustice has been done (Commonwealth v. Downer, 159 Pa. Superior Ct. 626 (1946)), or that the evidence, if believed, will justify the verdict: Commonwealth v. Lowery, 2 Bucks 157 (1952); Commonwealth v. Bendas, 39 Northumb. L. N. 141 (1967). The trial court does not believe that an injustice has been done and the evidence amply justifies the verdict.

The verdict was not against the law for if it were, it is not in disobedience to the trial court's instructions: Commonwealth v. Nestor, 183 Pa. Superior Ct. 350 (1957); Bendas, supra.

During the sentencing hearing, the court was made cognizant of the circumstances surrounding defendant's background, family situation and his status in the various prison "programs."

The court can provide that a sentence should start after the termination of another sentence, that is, that it shall be a successive term, rather than that it should run concurrently with the prior sentence: Act of May 28, 1937, P. L. 1036, 19 PS §894; Commonwealth ex rel. Ventura v. Cavell, 186 Pa. Superior Ct. 204 (1958). If defendant is prosecuted while imprisoned for another offense, the sentencing court may provide that the new sentence shall run from the date of its imposition or from the expiration of the previous sentence or sentences: §894, supra; Commonwealth ex rel. Jones v. Rundle, 413 Pa. 456 (1964). Defendant in the instant case was given a proper successive sentence. The date of the commitment means the date of last commitment for the offense for which the sentence is imposed (19 PS §895), rather than a different offense (Commonwealth ex rel. Dilitka v. Manley, 55 Lack. Jur. 212 (1954)), or more specifically, the commitment which marks the commencement of the last period of actual

imprisonment immediately preceding imposition of the final sentence: Scasserra v. Commonwealth, 180 Pa. Superior Ct. 16 (1955); Commonwealth ex rel. Accobacco v. Burke, 162 Pa. Superior Ct. 592 (1948); Commonwealth v. Walker, 31 D. & C. 2d 480 (1963). Here defendant had already begun serving a 2- to 10-year sentence for another crime committed in Philadelphia County, therefore, the sentence of 2- to 7-years imposed by this court begins to run immediately in succession of the termination of the minimum of the first sentence, i.e., to begin on May 17, 1973.

For the above reasons, the court enters the following

## ORDER

The motion for new trial and for arrest of judgment are dismissed; motion to vacate and reconsider sentence is denied.