Commonwealth *v.* Bowles, Appellant.

Argued April 20, 1948. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and FINE, JJ.

*William W. Litke,* with him *Fleming & Litke,* for appellant.

*Edward L. Willard,* District Attorney, for appellee.

OPINION BY DITHRICH, J., July 23, 1948:

Appellant was charged in two separate indictments with having committed the crime of sodomy on two separate occasions. The first offense was alleged to have been committed December 30, 1946, and the second, April

18, 1947. He was acquitted of the second offense but convicted of the first. He filed motions for a new trial and in arrest of judgment. Both motions were refused. On this appeal, however, he has assigned as error only the refusal of his motion for a new trial.

Appellant is 46 years of age and unmarried. The prosecuting witness was a boy 14 years of age when the first offense is alleged to have been committed. Appellant was at the time pursuing a course of study looking to his master's degree in music at Pennsylvania State College. He had been Supervisor of Public School Music in Mercer, Pa., from 1936 to 1942, and from 1942 to March, 1946, he was in the Army, having served overseas in the Burma sector. Following his discharge from the Army, he took a six weeks' course at Carnegie Tech, Pittsburgh, in the summer of 1946 and entered State College in the fall. It was then that he met the Shearer boy, having first been attracted to him by the fact that they both bore the given name of Cecil.

During the Christmas holidays, he visited his brother in Pittsburgh, and on December 27, from the brother's address, he mailed a New Year's greeting card to Shearer. It was in a sealed envelope and addressed to Shearer at "R. F. D., State College, Penna." In addition to the printed New Year's greeting, the following personal message was written on the card: "Will arrive in Bellefonte about noon Monday Dec. 30th on the train. Am staying at the Penn-Belle Hotel Monday & Tuesday nights. 'Cecil'." He testified that he was to play in an orchestra at a dance on Tuesday night, New Year's Eve, and that he went to Bellefonte a day early so that he would be certain to be on time for the dance. Instead of registering at the hotel from his State College address, or from his Mercer address, he registered from his brother's address. No explanation was given by him for so doing.

The Shearer boy testified that the greeting card was handed to him by his mother late in the afternoon or

early in the evening of December 30 at his home on Bellefonte rural route, and that in response to the message he went to the hotel where he met Bowles about eight o'clock. Bowles took him out to dinner and then took him to his room in the hotel where the offense allegedly was committed. He was given two dollars by Bowles and after leaving the hotel returned to his home.

It is not denied that Bowles mailed the card or that he was registered at the Penn Belle Hotel, but it is vigorously and strenuously denied by him that he committed sodomy on the boy on the date alleged, or at any other time. He bases his argument in support of his appeal from the refusal of his motion for a new trial on the ground that the verdict was against the weight of the evidence, chiefly for the following reason. Before the greeting card left the post office at State College, a line in red pencil was drawn through "State College" and a similar line was drawn through the words "Unknown on R. D." which had been stamped on the envelope at State College. It was then re-addressed to "Bellefonte, R. D." and handstamped or stenciled "State College, Pa., Dec. 30, 1946, 1:30 PM." The postmaster at Bellefonte, called as a witness by appellant, testified that in due course of the mails the card would not have reached the Bellefonte office until 8 P. M. on December 30 and would not have been delivered on the Bellefonte rural route until the following day. This testimony was offered for the purpose of rebutting the testimony of Shearer that he had received the card December 30.

Had the prosecution relied on the presumption that the card would have been placed in the Shearer mail box on December 30 in due course of the mails, the presumption would have been clearly rebutted by the testimony of the Bellefonte postmaster. Cf. *Beeman v. Supreme Lodge, Shield of Honor*, 215 Pa. 627, 64 A. 792. But the prosecution did not rely on a presumption. It relied on the direct and positive testimony of the boy as to when he received the card, and the testimony of his

mother that she took it from the mail box and handed it to him, although she could not, or at least did not, attempt to fix the time. So what we really have is the defense attempting to rebut with a presumption direct and positive testimony of the prosecution, rather than the prosecution relying on a rebuttable presumption. Furthermore, the postmaster admitted that it was possible for the card to have been delivered to the boy without its going through the Bellefonte office. There was nothing on the envelope in which it was contained to indicate that it had ever gone through the Bellefonte office.

The Commonwealth argues that "It is obvious that the clerk at the State College post office may have seen the letter on the 'unknown desk' and recognized the person to whom it was addressed, for it appears that the residence of the witness was about three miles from State College . . . which would be considerably closer than the Bellefonte post office and have delivered the letter by hand." It is not "obvious" that "the clerk . . . delivered the letter by hand." Both the mother and the boy testified that it was she who handed it to him. But we agree that it is at least a possibility based on the testimony of the postmaster and a fact that may have been inferred by the jury from testimony that it found to be credible. The jurors, having rejected the testimony of Shearer as to the offense alleged to have been committed April 18, probably accepted it as to the offense for which they convicted appellant because of the self-incriminating or "crucifying" greeting card which he admittedly sent to the boy. That is why we attach so much importance to it and have so carefully weighed and considered and discussed at some length the testimony pertaining to it.

In our opinion the testimony of the boy, standing alone, would not be sufficient to sustain a conviction. His credibility was greatly weakened by the presumption that in the ordinary or due course of the mails he

would not have received the communication from Bowles until the day following the commission of the alleged offense. But when his testimony is considered in the light of all the attendant circumstances and especially the presence of the appellant at a time and place appointed by him, a man of 46, for a meeting with a boy of 14, one can come to no other logical conclusion than that the meeting was for the purpose of an assignation and that the illicit purpose of the assignation was attained by the perpetrator.

Whether the presence of the boy in appellant's hotel room resulted from the message sent to him by appellant, or from a chance meeting, is not of great importance, except as it affects the credibility of the boy. The important fact, as found by the jury, and it is the crux of the case, is that Bowles took the boy to his room in the hotel and there committed the act of sodomy.

The granting or refusal of a new trial is within the discretion of the trial court and its action will not be reversed on appeal unless a clear abuse of discretion appears. *Commonwealth v. Dress*, 354 Pa. 411, 47 A. 2d 197; *Commonwealth v. Dellcese*, 155 Pa. Superior Ct. 120, 38 A. 2d 494.

As stated in the opinion of the learned president judge of the court below, he "had an opportunity to observe the principals in this case and Cecil Shearer, the young man, was a country boy, large for his age, and not too bright. Cecil A. Bowles is a much older individual and an educated man.

"The acceptance of the testimony of Cecil Shearer would account for the interest which the defendant had in the younger man. There are a great many young men in State College and yet the testimony of Cecil Bowles impresses one with the fact that this boy had been singled out by the defendant for some reason. . . . This would appear to be more than a mere passing acquaintanceship, . . ."

Upon the whole record we are satisfied that the defendant was fairly and ably tried and defended, and properly convicted and sentenced.

The judgment is affirmed, and it is ordered that appellant appear in the court below at such time as he may be there called and that he be committed by that court until he has complied with his sentence or any part thereof which had not been performed at the time this appeal was made a supersedeas.