Commonwealth *v.* Helwig, Appellant.

Submitted April 12, 1957. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*Roy Helwig,* appellant, in propria persona.

*Richard D. Agresti,* Assistant District Attorney, with him *Herbert J. Johnson, Jr.,* District Attorney, for appellee.

OPINION BY WATKINS, J., September 30, 1957:

Roy Helwig was charged with burglary, larceny, and receiving stolen goods. He was indicted by a grand jury, tried in the Court of Oyer and Terminer of Erie County and found guilty of larceny and burglary on February 23, 1956. The court below dismissed the charge of receiving stolen goods. After a motion for a new trial was refused by the court below, the appellant was sentenced on May 17, 1956 to pay a fine of $100., the costs of prosecution, to restore the property taken, if he had not already done so, or pay the value thereof to the owner, and undergo imprisonment in the Western State Penitentiary, for an indefinite term, minimum 4 years, maximum 10 years. The appellant was represented by a court appointed attorney until the moment of trial, when at the request of the appellant, a motion to withdraw his appearance was granted. The appellant then tried the case himself and has filed this appeal and brief on his own behalf. This appeal is from the judgment and sentence imposed by the court below.

The Girard Police were informed by J. C. Jacobsen that his place of business was broken into on or about September 29, 1954. A Black & Decker portable saw, a used Smith-Corona typewriter and a used Victor movie projector and speaker had been taken. On or about October 31, 1954, the Chief of Police was in-

formed by an anonymous letter that the appellant committed the burglary. The articles stolen were located and recovered by the police in the hands of Joseph Campana and Benjamin Blakely, in Warren, Ohio. Both these men had been in an Ohio prison with the appellant and the appellant had visited the home of Campana on several occasions in the two-year period prior to the present offense. Both men were questioned but the investigation failed to produce any evidence of their guilt. Both men voluntarily appeared at the trial and testified that the appellant had sold the stolen articles to them.

It was later discovered that Cora Helwig, wife of the appellant, had written the anonymous letter and after the police interviewed her, the appellant was arrested and charged with the crime. At the time of the trial Mrs. Memmert, then divorced from her husband, was called by the appellant as his witness. However, she testified that the appellant admitted to her the commission of the crime and the trial judge permitted a rigid cross-examination by the appellant of his witness which took about 4 days of the 8-day trial.

The appellant throughout the trial made every effort to place the blame for the burglary on Campana and Blakely, the Commonwealth's witnesses. He admitted possession of the property involved but claimed they had been gifts from them. The jury evidently believed the appellant's wife and the commonwealth's witnesses, Campana and Blakely, and convicted him.

The appellant set out from the beginning of his trial to use the constitutional safeguards of every citizen as weapons to thwart the efforts of constituted authority to protect society from criminal acts. The lower court recognized his plan and leaned over backwards to patiently extend to him every protection of the law. Judge EVANS, in his opinion, denying a new trial,

pointed this out. He related the tactics of the appellant in a series of trials before the Federal Courts, as reported in *United States v. Helwig*, 152 Federal Reporter, 2nd Series, page 456; United States Supreme Court Reports, 90 Law Ed. 1601, *United States v. Helwig*, 7 Federal Rules Decisions, wherein, among other things, he claimed he was not given time to prepare for his trial; that counsel assigned to him was inexperienced so that he was forced to conduct his own defense; that he was denied the opportunity to summon witnesses to testify on his behalf; and when a direct order was made granting him this right, he refused to name the witnesses. As the lower court said, "Without knowledge of this defendant's resourcefulness and prior experience we nevertheless guarded against successful repetition of the above referred to operation. . . .

"After his case was called, he requested that his attorney be relieved and stated his desire to try the case himself. We repeatedly throughout the trial offered him the assistance of capable counsel, and at the time sentence was pronounced had the former appointed attorney present in court for such services as might be requested of him. At all times the defendant spurned our offers and represented himself. We now have a situation such as existed and is reported in the United States v. Helwig, 152 Federal Report, supra. A large number of papers have been filed, some of which may be construed as pleadings while others seem to express contentions of law. It may be expected that this informal procedure will continue.

"Throughout the trial the defendant was guilty of tactics, well planned in this writer's opinion, which would not have been attempted or tolerated had the counsel continued to represent him. However, to avoid any appearance or suggestion of prejudice or unfair-

ness we went out of our way to patiently warn him of his errors and offer to reappoint competent counsel".

The appellant in his brief raises 54 questions for the reversal of the conviction and the granting of a new trial. There is nothing in the record to support the majority of the questions raised and many of the questions were not raised in the court below, and they, therefore, require no further attention, although the entire brief and record has received detailed and careful study.

The appellant claims that the charge of the court is erroneous in that, the lower court judge misstated facts in the summary of the evidence. A close examination of the questions raised show that the complaints made are based on immaterial facts and the law is well settled that where a charge gives a fair summary of the testimony and the jurors are told to rely on their own memories, and not on the memory of the charging judge, in passing on the evidence, no proper ground for the complaint is presented. The appellant also claimed error in the court expressing its opinion in commenting on the evidence. Again the law is well settled that a trial judge has a right to express such an opinion provided the jury is left free to act upon their conclusions. *Com. v. Foster,* 364 Pa. 288, 72 A. 2d 279 (1950). Many of his questions were not raised in the court below and cannot be considered in this appeal unless some basic or fundamental error has been committed affecting the merits of the case, which is certainly not the case here. The charge in this case gave a fair and careful summary of the evidence, a clear statement of the questions involved and the law applicable.

We can find no merit in the appellant's claim of error because of the trial court's refusal to direct a verdict. The evidence of the commonwealth's witnesses

clearly established a prima facie case and the matter was properly submitted to a jury. *Com. v. Schultz,* 170 Pa. Superior Ct. 504, 87 A. 2d 69 (1952).

The appellant's claim of error based on the refusal of a new trial is without merit. The granting of a new trial is within the discretion of the trial court and its action will not be reversed on appeal unless a clear abuse of discretion appears. *Com. v. Bowles,* 163 Pa. Superior Ct. 123, 60 A. 2d 362 (1948). No such abuse of discretion can be found in this case.

At the close of the Commonwealth's case the appellant moved for a mistrial on the ground that a past criminal record was published in a local newspaper prejudicing his defense. The record, however, does not support this claim and the trial judge repeatedly cautioned the jury that what appeared in the paper was just some reporter's opinion and was not to be considered as fact. He also requested the jury to refrain from reading newspaper reports concerning the trial. We cannot assume such articles influenced the jury which they may or may not have seen.

The appellant's claim of reversible error based on the refusal to grant a mistrial on another point deserves serious discussion. Joseph Campana called as a commonwealth's witness testified under direct examination that he knew the appellant, Roy Helwig, about 2 or 3 years prior to September, 1954, and identified him in the courtroom. He further testified that during those 2 or 3 years he saw him about 4 or 5 times. The appellant cross-examined Campana at length. He strenuously attacked his credibility and brought out in evidence a long list of criminal convictions. He attempted to contradict the witness as to the length of time the witness knew the appellant. The cross-examination that led up to the basis for the alleged error was as follows:

"Q. Although you saw him practically every day in 1948 and 1949, you just practically knew him for three years? A. Yes, that's right; I knew you for three years, and I met you back in 1948. Q. Then you have known Roy Helwig for eight years? A. Well, yes. Q. And you have known Roy Helwig well for eight years, haven't you? A. Yes; the time I met you would be eight years". This illustrates the attempt of the appellant to contradict the witness and destroy his credibility to the jury. Then later on in the cross-examination the following took place. "Q. A while ago you testified that you knew Helwig for three years, and then you admitted that you saw him seven or eight years ago, every day? Right? A. Actually I only knew you two or three years. By The Court: Q. Where did you see him? A. I first met him in 1948 when we were together in Ohio State Penitentiary, and I knew him for two or three years. Mr. Helwig: I object to that". At this time the record does not disclose any ruling by the lower court. The appellant proceeded with his cross-examination and had the witness repeat and emphasize the meeting in the State Penitentiary.

At the close of the commonwealth's case the appellant then made a motion for a mistrial because of the disclosure by Campana that he had been in the Ohio State Penitentiary. The court denied the motion saying, "Inasmuch as you were personally attacking his credibility on what appeared to be conflicting statements. . . . He was therefore entitled to establish what was otherwise a contradictory report of acquaintance by telling the truth. Had you not attempted to discredit him and force this testimony, there might have been some basis for your argument".

The appellant in presenting his argument to the lower court in behalf of his motion said, inter alia, "and in fact I know the law in Pennsylvania is very

clear and it prohibits bringing out a man's criminal record in a case, that is, the defendant's criminal record, unless he takes the witness stand in his own defense or if he is being tried for a crime in which his past criminal history would show guilt in the present trial. Other than those two exceptions the defendant's crime record cannot be brought out by the prosecution or anyone else". A careful study of his cross-examination discloses a clever plan on his part to bring about the disclosure he now complains about. While pretending to seek sympathy from the court because of his self inflicted burden of defending himself, the knowledge he disclosed of the law with regard to the introduction of distinct crimes suggests that he shrewdly hoped to use this protection of the accused as a means of obtaining a reversal in the event the verdict went against him.

Later in his charge to the jury the court said, "of course you cannot convict this defendant because he was convicted or pleaded guilty of other offenses. The fact that a person might be guilty in one case does not make him guilty in another".

The testimony was irrelevant but it seems clear that it would not influence the jury and it has been held that even if it did have a slight effect, would not be ground for reversal. *Com. v. Savor*, 180 Pa. Superior Ct. 469, 119 A. 2d 849 (1956), affirmed 386 Pa. 523, 126 A. 2d 444. This is particularly true in the instant case because the appellant continued his cross-examination that emphasized his incarceration, and then took the stand himself and opened up the whole question of his criminal background by reciting what he claimed to be his only violations of the law. On cross-examination the District Attorney properly attacked his credibility by disclosing additional violations that he had conveniently failed to remember.

In *Com. v. Savor*, supra, the District Attorney, on direct examination, brought out the fact that the defendant had been in prison, and the lower court on motion refused to withdraw a juror. In the case at bar the disclosure came as a result of the appellant's effort to affect the credibility of a commonwealth's witness.

We are satisfied from our review of the record that the appellant received a thoroughly fair trial and was properly convicted. We can say with complete assurance, the appellant was not and could not have been prejudiced by the alleged improper remark, particularly in view of what happened in the subsequent cross-examination and the testimony of the appellant on his own behalf.

We must commend the patience of the trial judge in this case and agree wholeheartedly with his opinion where it states, "Although the courts are and should be concerned that the rights of a defendant charged with crime be fully protected, nevertheless society should also be protected against what we believe to have been in this case unjustifiable and malicious effort to thwart justice and orderly judicial procedure", and with the concurring opinion of Judge LAUB, where he says, "No fair-minded person can read the record in this case without reaching the conclusion that the defendant was afforded more rights, privileges and concessions than he was entitled to. At a high cost to the citizens of this community, this defendant cluttered up the record with repetitious cross-examination, repeated flaunting of rules of evidence and lengthy colloquies, motions, arguments and other devices calculated to try the patience of the trial judge and to trap him into the commission of reversible error. Had defendant been represented by counsel who employed such tactics, prompt disciplinary measures would undoubtedly have

been taken". Judge WOODSIDE of this Court, in an address before the Pennsylvania Bar Association, aptly summed it up when he said, "Drawing the line between the accused and the officers of his government is a difficult and serious problem for appellate courts. If it is drawn too far in one direction, individual freedom will be lost through the abuse of governmental power. If it is drawn too far in the other direction, free government has insufficient protection against those who would destroy it, and its citizens have inadequate protection against the criminals".

Judgment affirmed.