**UNITED STATES of America ex rel. Roy HELWIG, Appellant,**

v.

**James F. MARONEY, Superintendent, Western State Penitentiary, Pittsburgh 33, Pennsylvania, Appellee.**

No. 12896.

United States Court of Appeals Third Circuit.

Submitted Oct. 6, 1959.

Decided Oct. 29, 1959.

Roy Helwig, pro se.

Herbert J. Johnson, Jr., Dist. Atty., of Erie County, Richard D. Agresti, Asst. Dist. Atty., Erie, Pa., for appellee.

Before BIGGS, Chief Judge, and McLAUGHLIN and STALEY, Circuit Judges.

McLAUGHLIN, Circuit Judge.

This is an appeal from the denial of a writ of habeas corpus.

On February 23, 1956, appellant was found guilty of burglary by a jury of the Court of Quarter Sessions, Erie County, Pennsylvania. The trial lasted eight days, through all of which appellant, at his own insistence, represented himself. The transcript contains 746 pages of testimony, the vast bulk of which consists of appellant's direct and cross-examination of witnesses. That record plainly reveals the great restraint and patience of the trial judge in his attempts to keep the defendant within even the most liberal bounds of procedure. On denying the application for a new trial, the court en banc said regarding the defendant's trial conduct: "Throughout the trial the defendant was guilty of tactics, well planned in this writer's opinion, which would not have been attempted or tolerated had counsel continued to represent him. * * * Although the courts are and should be concerned that the rights of a defendant charged with crime be fully protected, nevertheless society should also be protected against what we believe to have been in this case unjustifiable and malicious effort to thwart justice and orderly judicial procedure." One of the judges in a separate opinion stated: "No fairminded person can read the record in this case without reaching the conclusion that the defendant was afforded more rights, privileges and concessions than he was entitled to. * * * With all due deference to the patient trial judge who submitted to defendant's tactics in order that there be no advantage taken of him because no counsel was present, I am of opinion that the law does not require that a trial judge go as far as was done in this case. * * * If any error was committed in this case it was entirely against the Commonwealth."

Following the denial of the new trial motion Helwig was sentenced to a term of four to ten years. On September 30, 1957 the Pennsylvania Superior Court affirmed the conviction saying in part [Commonwealth v. Helwig, 184 Pa.Super.

370, 134 A.2d 694, 696], "The appellant set out from the beginning of his trial to use the constitutional safeguards of every citizen as weapons to thwart the efforts of constituted authority to protect society from criminal acts. The lower court recognized his plan and leaned over backwards to patiently extend to him every protection of the law." Leave to appeal to the Pennsylvania Supreme Court was denied on July 21, 1958.

On January 8, 1957 the Court of Common Pleas refused a petition for habeas corpus as premature, pending decision of the Superior Court on Helwig's appeal from his conviction. A petition to appeal from this ruling was denied by the Pennsylvania Superior Court on February 13, 1957 for non-payment of the filing fee. The Pennsylvania Supreme Court similarly ruled on March 8, 1957. Certiorari was denied by the United States Supreme Court on June 10, 1957. Helwig v. Cavell, 354 U.S. 912, 77 S.Ct. 1302, 1 L.Ed.2d 1430.

On January 31, 1958 Helwig attempted to file an original application for a writ of habeas corpus with the Pennsylvania Supreme Court which was refused since it was not the proper procedure. Prior to this, on January 21, 1958 Judge Sorg of the United States District Court for the Western District of Pennsylvania denied Helwig a writ of habeas corpus on the ground that he had not exhausted his state remedies on the issues he presented. Judge Sorg also refused a certificate of probable cause for appeal.

Another petition for a writ of habeas corpus was filed with the Court of Common Pleas on March 7, 1958 and an order to show cause allowed. That petition was dismissed on April 22, 1958. On May 16, 1958 leave to appeal the dismissal to the Superior Court was refused for non-payment of the filing fee. The Pennsylvania Supreme Court followed a similar course on June 10, 1958.

On November 5, 1958 Helwig filed a petition for habeas corpus with the United States District Court, Western District of Pennsylvania. A rule to show cause whether there should be a hearing

on the petition issued on December 2, 1958. As a result of the hearing on that rule the court allowed a hearing as to why the writ of habeas corpus should not issue and ordered that nine persons, in Pennsylvania and Ohio, be subpoenaed to appear on behalf of Helwig. The hearing on the petition for habeas corpus was held before Judge Marsh on January 12, 1959. At both the preliminary hearing and that on the merits of the petition, Helwig refused counsel and appeared pro se. At the hearing on the merits, 238 pages of testimony were taken, consisting mostly of examination of witnesses by Helwig. On March 2, 1959 the application for the writ was denied. 171 F.Supp. 417. The present appeal is from the order denying the writ.

Throughout this lengthy litigation, appellant has asserted that he was "framed" by his wife, friends, a person who he alleges is the "real burglar" and various state and local officials; that this was accomplished by false and perjured testimony; and that the prosecutor knew the testimony was false. The issue of "framing" was exhaustively covered at the state court trial. Any conflicting testimony regarding it at that trial was before the jury for its consideration, and obviously resolved against Helwig. The District Court granted the habeas corpus hearing " * * * because relator represented that the testimony of five 'eye witnesses' was suppressed and withheld by the prosecution 'whose testimony would prove that [he] was falsely accused of burglary' * * *." The hearing was limited to:

a. Facts discovered since the trial which would show a conspiracy to falsely convict Helwig.

b. Facts showing suppression of evidence.

c. Facts showing a denial of due process and equal protection of the law.

The Court made findings of fact substantially as follows:

a. None of the allegedly suppressed witnesses was in possession of any facts or evidence favorable to Helwig. "In fact, had their testimony been offered at the trial, it would have corroborated the testimony of other Commonwealth witnesses * * *."

b. None of the prosecuting officers knowingly and intentionally used or participated in any conspiracy to use perjured testimony at the trial.

c. Helwig's rights under the Fourteenth Amendment were not violated at his trial, nor was he the victim of fundamental unfairness.

Unless the above findings are clearly erroneous, they should not be set aside on review. Fed.R.Civ.P. 52(a), 28 U.S. C.A.

An exhaustive study of the record and of appellant's brief forces the conclusion that he is endeavoring to relitigate the question of his innocence or guilt by means of this habeas corpus proceeding. Urging his own interpretation of what the evidence proves, his brief is a mass of conclusions, most of which are contrary to the jury's verdict. For example, on page 5, paragraph 3 of his brief appellant states, "On November 22, 1954, when Cora Helwig's plans to frame petitioner had gone astray and she had to reveal Campana as the burglar, Cora did not mention Blakeley as the possessor of the projector, because Cora wanted to frame the 'other woman'; Cora wanted to get Loretta Moran's fingerprints on the projector, with Blakeley as a witness, and to get Loretta caught on the jail steps with projector." Referring to the pages of the transcript of the trial and the habeas corpus hearing on which appellant relies as the source of this evidence, one finds testimony by Loretta Moran only to the effect that Cora asked her (Loretta) to go with her (Cora) to pick up a camera and place it on the jail steps (the camera was one of the stolen articles). The remainder of the above quoted "evidence" appears nowhere in the record but is merely appellant's conclusion. Again, at page 6, paragraph 1

of the brief, presumably to show he was "framed" so that Campana, the "real burglar" could go free because Campana had influence, Helwig states: "Campana knew the wife of Chief of Police Antolik." Going to that portion of the record cited, it is found that the witness, Joseph Campana denied knowing, or having made the statement that he knew "some close relative" of the Police Chief.

Appellant charges at length that the portions of the state and federal machinery involved are being employed in a grand conspiracy to "frame" him. He makes constant reference to the Chief of Police and the District Attorney brainwashing and intimidating witnesses, and destroying evidence; that the trial court was part of the scheme; and that the District Judge " * * * had secretly laid plans with the opposing party to run and rush all witnesses on and off the witness stand in one day and close the case and deny the petition." His brief includes eight general points. These fall into the following contentions:

a. That the facts show a "frame-up" and that appellant is innocent.

b. That the "frame-up" was done with the knowledge and assistance of the state prosecutor.

c. That appellant's constitutional rights were violated in that the District Court conducted a "sham" hearing and did not permit the appellant to prove his innocence.

■ Whether the evidence showed appellant to have been the victim of a "frame-up" or proved his guilt was properly a jury question. The jury decided it proved appellant's guilt. The District Court may not, on a petition for habeas corpus, usurp the function of the state jury by determining, de novo, the innocence or guilt of a prisoner convicted under state process. Shaver v. Ellis, 5 Cir., 1958, 255 F.2d 509.

■ Of course, false evidence may not knowingly be used nor may such evidence be permitted to go uncorrected in order to obtain a conviction. Napue v. People of State of Illinois, 1959, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217. But the burden is upon the appellant to prove such perjury and that it was knowingly and intentionally used by the prosecution. Lister v. McLeod, 10 Cir., 1957, 240 F.2d 16; United States ex rel. Rooney v. Ragen, 7 Cir., 1946, 158 F.2d 346, certiorari denied, 1947, 331 U.S. 842, 67 S.Ct. 1532, 91 L.Ed. 1853; United States ex rel. Borday v. Claudy, D.C.M.D. Pa. 1952, 108 F.Supp. 778. Here, with the exception of discrepancies in the testimony of several witnesses, discrepancies which are natural and expected, particularly where the greater part of the direct and cross-examination is done by a layman unfamiliar with the proper phrasing of questions, the appellant was unable to produce evidence that the witnesses, or any of them, perjured themselves. Even assuming perjury, he failed completely to show the knowing and intentional use of perjury by the prosecution, or suppression of favorable testimony.

■■ The entire record on file in this court, including the transcripts of the hearing in the district court and of the original state court trial, reveals no basis for the characterization of said hearing as "sham". The District Judge, because he considered that the petition and supplemental petition for habeas corpus raised questions of fact, held a hearing. At that hearing appellant was afforded every reasonable opportunity to bring out facts that would show his conviction was tainted. The five witnesses, who appellant represented to Judge Marsh as having suppressed evidence were subpoenaed and placed on the stand. Helwig studiously avoided asking them questions which would squarely face the pertinent issues. Instead he simply attempted to retry the criminal case. The above quoted findings of fact of the District Judge are substantiated by the record. The vicious accusations against the state and federal courts concerned, judges and officers thereof and the law enforcement officers connected with this

matter were never supported by proof. Those accusations are not to be excused by the fact that appellant, having refused a court appointed attorney, appeared pro se.

The judgment of the District Court will be affirmed.