Commonwealth *v.* Zeger, Appellant.

Argued September 10, 1962. Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*Morton Witkin,* with him *Robert P. Shoemaker,* and *Witkin and Egan,* for appellant.

*Jay L. Benedict,* District Attorney, for Commonwealth, appellee.

OPINION BY WATKINS, J., December 13, 1962:

This appeal is from the judgment of sentence in the Court of Quarter Sessions of Franklin County on three counts of an indictment which contained in five counts,

five separate violations under the Act of April 6, 1939, P. L. 16, §1, 25 PS §2374, commonly referred to as the Anti-Macing Act.

This is the second time this case has been before this Court on appeal. The first is reported in 193 Pa. Superior Ct. 498, 165 A. 2d 683 (1961). The facts have not changed since that time and are as follows:

The Act in question reads as follows: "It shall be unlawful for any political committee or any member, employe or agent thereof, or for any public officer or employe, or any other person whatsoever, directly or indirectly, to demand from any public officer, subordinate or employe holding any office or position of honor, trust or profit under this Commonwealth, or otherwise engaged or employed in the service of the Commonwealth, or employed by, or in any way engaged in the service of, any political subdivision, or from any person receiving any public assistance whatsoever from the Commonwealth or the United States, directly or through employment on public works, or any person, association or corporation desiring or having a contract with, or a certificate, license or permit from, the Commonwealth or any political subdivision, any assessment or percentage of any money or profit, or their equivalent in any thing of value, with the understanding, express or implied, that the same may be used or shall be used for political purposes: Provided, however, That nothing in this act contained shall be construed to prohibit voluntary contributions to any political committee or organization for legitimate political and campaign purposes to the extent such contributions are not prohibited by law."

Five individuals, all employes of the Samuel G. Dixon State Hospital, a state institution for the treatment of tuberculosis, located at Mt. Alto, Pa., in various minor positions, testified to the receipt of a letter from C. D. Minehart, Democratic County Chairman of Franklin County, which read as follows:

"To Employees:

"Enclosed please find a 1959 application blank for employment, which we request you to fill out and complete and bring it with you to the Volunteer Fire Hall, South Mountain, Pa., for a personal interview on Wednesday, Feb. 25, 1959, at 7:30 p.m.

"Your failure to cooperate in this matter will be deemed by the Executive Committee as intention on your part to discontinue your employment. Greatly increased unemployment in this area makes it necessary to re-evaluate job positions and secure capable personnel. Therefore, please keep the above appointment without fail."

Accompanying this letter was a form called "Application for Employment", showing at the upper left corner, "County of Franklin-1959"; and in the upper right-hand corner, "Return to Franklin County Democratic Headquarters, 75 North Main Street, Chambersburg." The remainder of the application blank calls for a detailed statement of the name, residence, age, educational qualifications, previous employment, his party affiliation, political activities, and a pledge to obtain Democratic registrations. The name of the defendant, Lawrence C. Zeger, appeared on the letterhead as "State Committeeman". This was an error which was corrected by agreement of counsel. Zeger was in fact a member of the Executive Committee.

They further testified that in response to the letter they appeared at the Fire Hall at which time they were interviewed by the defendant in the presence of two other men, apparently members of the Democratic Executive Committee. They testified that they were instructed by the defendant to contribute monthly sums, ranging from $5 to $9 respectively, to the Democratic County Committee. There was also testimony that envelopes were supplied to them to make such payments and that they were also to secure Democratic registra-

tions. They were told by the defendant that many people were applying for their positions.

The first question raised in this appeal is whether the court below committed fundamental and reversible error in failing to explain the meaning of the statute to the jury when requested by the jury foreman and in apparently permitting the jury to be instructed by one of the jurors as to the meaning and interpretation of words in the statute.

The trial judge in his charge read pertinent portions of the Act to the jury but did not attempt to define or explain how the language of the Act might be interpreted. After some deliberation the jury returned for further instructions and requested a copy of the Act and asked to have it explained again. At which time the jury foreman stated to the Court: "Your Honor, may I add something? If there is any doubt about our understanding, I understand one of the jurors is a college professor and I am sure he can understand the wording sufficiently enough so that it won't be misinterpreted." The court made no reply to this but read the Act in full to the jury after which it retired and later rendered its verdict.

The duty of a trial judge has clearly been stated as being to clarify the issues so that the jury may comprehend the questions they are to decide and not only to state to the jury correct principles of law applicable to the pending case and to endeavor to make such principles understandable in plain language, but also the duty is imposed upon the judge to assist the jury in applying the principles to the issues presented to them for determination. *Archer v. Pennsylvania Railroad Co.*, 166 Pa. Superior Ct. 538, 72 A. 2d 609 (1950).

The jury is bound to take the law from the court which they are to apply to the facts they find. *Com. v. McManus*, 143 Pa. 64, 21 A. 1018 (1891). The trial judge should in no way delegate this duty to give the

law and explain the same, nor abdicate the power to do so, as may be inferred from the occurrences at this trial.

The next question is whether the trial court erred in stating portions of the testimony of prosecution witnesses to the jury.

The trial judge, in his charge, inaccurately reviewed the testimony of the various witnesses by changing the wording so that different inferences might be drawn by the jury than could have been from the exact testimony of the witnesses. This, we are sure, was done innocently and in an attempt to aid the jury. However, in a case such as this where the fulcrum is what precisely was said by the defendant and what meaning a reasonable person could infer from it, it is necessary that any review of the evidence be accurate and impartial. *Com. v. Warner*, 13 Pa. Superior Ct. 461 (1900); *Com. v. O'Brien*, 312 Pa. 543, 168 A. 244 (1933).

The jury must determine from what was said by the defendant, as related by the witnesses, whether there was a request for voluntary contributions; or whether there was a direct or indirect demand in violation of the Act. A misstatement of what was said, by the court, may very well influence the jury in its determination of the guilt of the defendant in this type of case. Even, if as here, no objection was made at the time by counsel, it is fundamental and reversible error. *Com. v. O'Brien*, supra.

The third question is whether error was committed in permitting a prosecution witness to testify as to her impression and understanding of defendant's conversation with her.

This was error since the evidence indicated no direct demand for payment by the defendant. The only question to be determined was whether he made an indirect demand. This could only be done by an interpretation of, or an inference drawn from what he said.

This is not to be a subjective interpretation by the victim but an objective interpretation by the jury in light of what a reasonable, ordinary person would take from what was said and done under like circumstances.

The next question raised is whether the Act of Assembly under which the indictment was drawn violates the due process clause of the Fourteenth Amendment of the United States Constitution and Article II, §1, of the Pennsylvania Constitution, because it is too indefinite, especially as to the words "direct", "indirect", "demand", and "voluntary". The Act herein concerned, while not as clear and accurate as appellant might desire, is sufficiently definite as to be reasonably defined and interpreted as provided in the Act of May, 28, 1937, P.L. 1019, §§33 and 51, 46 PS §§533 and 551.

The fifth question is whether the trial court erred in its instruction to the jury as to "Reasonable doubt". The court charged as follows: "Now the Commonwealth, under this evidence, before you can find the defendant guilty, must have convinced you as jurors beyond a reasonable doubt that this defendant, in this instance, Lawrence C. Zeger, did violate this Act of Assembly which we just read to you. Did he directly or indirectly under all these circumstances demand any money or other thing from these five people? You must be convinced by this evidence beyond a reasonable doubt that Lawrence Zeger did so. Now, that reasonable doubt is not a doubt that arises out of sympathy or pity or prejudice. As I said during the course of the argument, this is not a political party dispute. This is a serious matter, regardless of political party, and that doubt must be, if you have any, the type of doubt that would influence you as individuals in making a decision in matters that are of importance to you, and you all have major or important decisions in your own every-day affairs."

While this charge may not have utilized the model language set forth in *Com. v. Sauders,* 390 Pa. 379, 134 A. 2d 890 (1957), it was sufficiently clear as not to confuse the jury and a fair exposition of the rule as to reasonable doubt.

The final question is whether it was reversible error to substitute another trial judge after the jury was selected and sworn but prior to the taking of testimony.

In *Com. v. Thompson,* 328 Pa. 27, 195 A. 115 (1937), it was held that the trial proceedings had not yet reached the stage where the substitution of one judge for another in a criminal trial would be prejudicial to the defendant and constitute reversible error. The Supreme Court there said: "The examination of jurors under voir dire does not elicit any information that can be used in the trial of the case; such examination is merely for the purpose of securing a competent, fair and unprejudiced jury." The substitution was made before the introduction of any evidence. The law in Pennsylvania is settled that a judge may not be substituted after the introduction of testimony has begun. This is true, even if counsel consented to the substitution. *Com. v. Claney,* 113 Pa. Superior Ct. 439, 173 A. 840 (1934).

The court below recites proceedings as they took place in this case:

"At the time the case was called for trial on May 17, 1961, the President Judge of Franklin County, the 39th Judicial District, sat while a jury was selected. The record indicates there were no challenges to any juror on behalf of the defendant on voir dire or otherwise. Two jurors were excused by the sitting judge because of hearing defects.

"Following the selection of the jury, Judge DEPUY who presided while the jury was being selected then caused the jury to be sworn in the instant case and cautioned the jury to not discuss the case or permit anyone to discuss it before them, and then recessed

until 1:30 P.M.  At 1:30 P.M. the writer of this opinion (PENTZ, J.), specially assigned to try the case, appeared in Court and the trial of the case was undertaken by the introduction of evidence.  The defendant made no objection to the change of judges following the swearing in of the jury, nor did the defendant raise any objection to such change until the motion for new trial was filed, following the verdict of guilty brought in May 18, 1961."

It is difficult to perceive how this one additional step in this misdemeanor case prevents the application of the same reasoning that was applied in the *Thompson* murder case, supra.  It is difficult to comprehend how the substitution of a judge after a jury has been sworn, any more than the supervision of the voir dire, has yet reached the stage that may violate any of the rights of the defendant to a fair trial or be prejudicial to his cause in any way.

As to substitution before the introduction of evidence: "Most of the few cases which have considered the matter have taken the view that there may properly be a substitution of judges in the preliminary stages of the trial, before any evidence has been received, the theory apparently being that the rule against substitution is designed to insure that the judge who hears the testimony as to the facts also applies the law thereto." 83 A.L.R. 2d, p. 1034.

Judgment of sentence reversed and a new trial granted.