## Commonwealth *v.* Crawford, Appellant.

Argued November 22, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

reargument refused June 29, 1973.

*Frank M. Jackson,* with him *John David Egnal,* for appellant.

*Edward G. Rendell,* Assistant District Attorney, with him *Milton M. Stein,* Assistant District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE POMEROY, May 4, 1973:

Arthur Crawford, the appellant, was convicted by a jury in Philadelphia of second degree murder and conspiracy to commit murder and was sentenced to a term of ten-to-twenty years' imprisonment. Following denial of post-trial motions, appellant brought this direct appeal. We will reverse and remand for a new trial.

It is necessary to discuss only one of appellant's three allegations of error.[1] The victim of the crime, Jesse Fisher, a fifteen-year old boy, was beaten and shot to death on August 12, 1969 by a number of youths, members of a rival street gang, as he slept on a step near the intersection of 15th and Clymer Streets in Philadelphia. Arthur Crawford was arrested and (along with others) charged with the crime after he gave an inculpatory statement to police authorities. The voluntariness of that statement was disputed at trial and appellant, corroborated by members of his family, testified that he had been at home at the time of the shooting.

One of the Commonwealth's witnesses was a fellow gang member of the defendant, one Ernest Downing, who testified at trial that he had overheard a conversa-

---

[1] The two remaining alleged errors are unlikely to recur at a subsequent trial and hence no purpose would be served by our discussing them at this time.

tion between two other members of the gang, Paul Geiger and Walter Westbrook: "Paul Geiger and Walter Westbrook were talking about going over to 15th Street and move on somebody. Paul Geiger, I called him, Taboo, he was saying, 'you all going over?' He was talking to all the guys around there." In its charge to the jury, the trial judge summarized the above quoted evidence as follows:

"Ernest Downing said that this defendant was present and you will recall that he testified what he said; the defendant said, 'let's go over and get them.' And they all went over and fifteen of them or so went across Broad Street."

The court then related how after further verbal assaults directed to the victim by the gang, the defendant, according to Downing, "pulled out his gun and shot the deceased several times". The court then charged: "That testimony alone, if you believe the testimony of Ernest Downing, will be sufficient to convict the defendant of one of the degrees of murder." At the conclusion of the charge defense counsel objected to and moved to strike the above quoted portion of the charge erroneously attributing to appellant the words of Geiger on the ground that it had defendant uttering damning words which no witness had placed in his mouth. The trial judge declined on the ground that he had frequently in his charge explained to the jurors that it was their recollection of the evidence that controlled, and that this was sufficient to cure whatever inaccuracies might have found their way into his review of the evidence.[2] We disagree, and find this

[2] Following the objection to the misstatement the Court made a supplemental charge to the jury, as follows: "I repeat to you, at the risk of boring you, but in the hope of making it explicit as it can be, that the discussion of the facts with you by the Court, by myself, is only recollection. It is your recollection that controls the law. That I can be wrong about my memory of the facts, there can be

particular misstatement, timely objected to and not corrected, to have been prejudicial error.

It is true, of course, that it is within the discretion of the trial judge in Pennsylvania to summarize for the benefit of the jury the evidence adduced at trial. *Commonwealth v. Westley,* 300 Pa. 16, 150 A. 94 (1930); *Commonwealth v. Kaiser,* 184 Pa. 493, 39 A. 299 (1898). In doing so, however, the judge must bear in mind that his "influence . . . on the jury is necessarily and properly of great weight . . . and jurors are ever watchful of the words that fall from him. Particularly in a criminal trial, the judge's last word is apt to be the decisive word." *Bollenbach v. United States,* 326 U.S. 607, 612, 90 L. Ed. 350 (1946). It is therefore vital that the trial judge in his summary avoid material misstatements of the evidence in the case as well as avoid comments which would be taken as indicating the court's opinion on the question of guilt or innocence. Cf. *Commonwealth v. Archambault,* 448 Pa. 90, 290 A. 2d 72 (1972); ABA Project on Standards for Criminal Justice, Standards Relating to the Function of the Trial Judge §5.6(a), at 68 (Approved Draft, 1972).

On at least one occasion in the past this Court has found it necessary to reverse a criminal conviction because the trial judge misstated the evidence in the case. In *Commonwealth v. O'Brien,* 312 Pa. 543, 168 A. 244 (1933), in which the defendant was convicted of bribery, the lower court misquoted the words attributed by a witness to the defendant. Mr. Justice DREW, writing for a unanimous court, observed: "This variance between the testimony of the witness and the judge's account of it was of such nature as seriously

no doubt about it. That I might make a statement that was attributed to one witness, that was not really his statement, was not done in an effort to convince you of one thing or another, but merely and only as my remembrance, which you will reconcile."

to prejudice the interests of the defendant and deprive him of a fair trial." Id. at 545. Mr. Justice MOSCHZISKER, in *Commonwealth v. Colandro*, 231 Pa. 343, 356, 80 A. 571 (1911), had earlier cautioned: "It is only in exceptional instances, where, for example, it plainly appears that the charge is misleading, or that it has a tendency to withdraw the attention of the jury from material evidence, or to magnify the importance of the proofs on one side and belittle those on the other, that a trial judge will be reversed for inadequacy of charge in reviewing the evidence."

More recently the Superior Court in *Commonwealth v. Zeger*, 200 Pa. Superior Ct. 92, 98, 186 A. 2d 922 (1962), has found reversible error in a situation analogous to *O'Brien*, supra. In the *Zeger* case the trial judge had inaccurately summarized the testimony of witnesses who had related conversations with the defendant, then on trial for unlawful solicitation of political contributions from governmental employees ("macing"). The Superior Court there said: "However, in a case such as this where the fulcrum is what precisely was said by the defendant and what meaning a reasonable person could infer from it, it is necessary that any review of the evidence be accurate and impartial." And in *Commonwealth v. Johnson*, 153 Pa. Superior Ct. 437, 443, 34 A. 2d 170 (1943), a misstatement of the evidence by the trial judge was held to be reversible error: "On the vital question . . . of the identity of the robber, the court misquoted the evidence by saying to the jury: 'She has him right up within a few feet of the scene of the crime', whereas Mrs. Stellmacher [the witness] last saw the defendant a block away. When defendant objected to the misstatement, the trial judge did not correct it. This wholly inaccurate review of the testimony prejudiced the defendant and constituted serious and fundamental error."

In the case at bar the defendant was charged with murder and conspiracy to commit murder. The gist of the latter crime, of course, is an unlawful agreement. Certainly the attribution to the defendant of the words, "let's go over and get them", when in fact no witness so testified is as prejudicial as was the variance between the judge's account and that of the witness in *Commonwealth v. O'Brien*, supra, a bribery case. The learned trial judge himself sketched the dimension of the prejudice when he instructed the jury that *"if you believe the testimony of Ernest Downing"*, the evidence relative to the killing "will be sufficient to convict the defendant of one of the degrees of murder".

We, of course, do not mean by today's decision to indicate that any and every variance between the evidence and the judge's summary will constitute reversible error. *Commonwealth v. Thomas*, 410 Pa. 160, 189 A. 2d 255 (1963); *Commonwealth v. Becker*, 326 Pa. 105, 191 A. 351 (1937); *Commonwealth v. Helwig*, 184 Pa. Superior Ct. 370, 134 A. 2d 694 (1957).

Judgment of sentence is reversed; the case is remanded for a new trial.

Mr. Justice EAGEN concurs in the result.

---

CONCURRING OPINION BY MR. JUSTICE NIX:

I concur in the result reached by the majority because immediately following the charge defense counsel specifically objected to, and requested a correction of, this particular portion of the trial judge's summary of the evidence and the court declined to take any measures to rectify this misstatement.

Mr. Chief Justice JONES and Mr. Justice ROBERTS join in this concurring opinion.