403 A.2d 91

**COMMONWEALTH of Pennsylvania**

v.

**Frank J. WADZINSKI, Appellant.**

Superior Court of Pennsylvania.

Submitted June 12, 1975.

Decided May 4, 1979.

Petition for Allowance of Appeal Granted Aug. 6, 1979.

James T. Geddes, Jr., Wilkes-Barre, for appellant.

Patrick J. Toole, Jr., District Attorney, Wilkes-Barre, for Com., appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

VAN der VOORT, Judge:

By our Opinion in this case, filed at 239 Pa.Super. 76, 361 A.2d 790 (1976), we affirmed the Order of the Court of Common Pleas below denying relief sought pursuant to appellant's petition for writ of certiorari directed to that court from a magistrate's judgment. We did not reach appellant's allegation that § 1614 of the "Election Code", Act of 1937, June 3, P.L. 1333, Art. XVI, added 1972, Dec.

28, P.L. 1658, No. 353, § 1 (25 P.S. § 3234), is unconstitutional. Appeal was allowed by the Supreme Court, which issued an Opinion broadening the scope of review of matters raised in an appeal from lower court's decision by certiorari and remanding the case to us for decision on the constitutional question. *Commonwealth v. Wadzinski*, 485 Pa. 247, 401 A.2d 1129 (1978).[1]

The challenged statute is as follows:

(a) No candidate for public office, or political committee or party acting on his behalf, shall place any advertisement referring to an opposing candidate for the same office which is to be broadcast or published during the forty-eight hours immediately prior to an election or published in a weekly newspaper or periodical during the eight days immediately prior to an election, with a television or radio broadcasting station, newspaper or periodical, unless he has first given a copy of the material to appear or be used in the advertisement and reasonable notice to the opposing candidate and the County Board of Educations of the county where the advertisement is to be placed in sufficient time for a reply advertisement to be published or broadcast at the same approximate time or in the same issue of the publication or on the same radio or television broadcast the original advertisement and prior to the election in question.

Section 3234 goes on to detail how notice shall be given and what penalties may be rendered for noncompliance. Appellant argues that the statute is overbroad and vague in that it provides a criminal penalty for references to an opposing candidate and is not limited to types of advertisements. Further, he calls the provision a prior restraint of free expression in contravention of the First and Fourteenth Amendments. An equal protection argument is also raised in that appellant posits that those candidates in urban areas with more ready and diverse forms of media coverage may

---

1. The lower court had concluded, as we did in the former appeal, that the issue of constitutionality was not reviewable upon a writ of certiorari. Nevertheless it went on to find that the within-challenged statute is constitutional.

give the required notice more expeditiously than those in rural areas, who may have available only periodic press coverage. We disagree and hold 25 P.S. § 3234 constitutional.

The avowed purpose of this statute is to prevent media presentation of one candidate's, or his party's, views of the opponent, by way of advertisement, within that crucial period immediately before an election, without notice so that the opponent does not have time to respond. In this era of increased spending on political advertisements, the obvious goal is to remove the disadvantageous and unfair results possible through a last minute, one-sided "smear" campaign. In what might be referred to as a battle of media advertisements, under this statute the opposing candidate must be forewarned and given the chance to answer the ads of the other side.

There is a small body of law, stemming in this Commonwealth at least from *Commonwealth v. Evans*, 156 Pa.Super. 321, 327, 40 A.2d 137, 139 (1945), allocatur refused, holding that it is constitutional for the legislature, by its police power, to "promote clean campaigning and pure elections by regulations that have a real and substantial relation to the object to be attained, and which merely result in such a limited restraint upon the activities of candidates for public office, and of their advocates, as may be deemed necessary to prevent the electorate from being unduly influenced by prejudicial matter . . . ." The "object to be attained" by the section of the "Election Code", *supra,* held constitutional in *Evans, id.,* prohibited distribution of anonymous political matter. Other "goals to be attained", held constitutional, are (a) the prohibition against publication of matter reflecting upon the character or actions of an opposing candidate unless with the publication there be noted who is responsible for it, *Commonwealth v. Acquaviva*, 187 Pa.Super. 550, 145 A.2d 407 (1958) allocatur refused, referring to § 415 of the former "Penal Code" (18 P.S. § 4415); (b) the prevention of "macing", *Commonwealth v. Zeger*, 200 Pa.Super. 92, 186 A.2d 922 (1962), referring to the Act of 1939,

April 6, P.L. 16 (25 P.S. § 2374); and (c) the restriction against certain public employees' taking part in politics, *Farview v. Urda*, 23 Pa.Cmwlth. 607, 353 A.2d 61 (1976), referring to the "Civil Service Act" (71 P.S. § 741.905).

■ We consider that the goal to be attained by the statute here under challenge, is validly a part of the legislative prerogative under its police power. It is a very limited restraint of free speech, applicable to those already and by their choice in the public arena as candidates. It is not unjust or unconstitutional to hold them to this duty of disclosure to their opposition, and to punish for violations thereof, when the end sought is clean, fair campaigning, a laudable goal for general conduct. We hold 25 P.S. § 3234 constitutional.

Affirmed.

SPAETH, J., files a dissenting opinion.

JACOBS and WATKINS, former President Judges, and HOFFMAN, J., did not participate in the consideration or decision of this case.

SPAETH, Judge, dissenting:

In *Monitor Patriot Co. v. Roy*, 401 U.S. 265, 272, 91 S.Ct. 621, 625, 28 L.Ed.2d 35 (1971), the Supreme Court observed that ". . . it can hardly be doubted that the constitutional guarantee [to free speech] has its fullest and most urgent application precisely to the conduct of campaigns for political office." The particular importance of protecting vigorous and unfettered political debate has been repeatedly emphasized. *See Buckley v. Valleo*, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976); *Mills v. Alabama*, 384 U.S. 214, 86 S.Ct. 1434, 16 L.Ed.2d 484 (1966); *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). Hence, any limitation of speech in this area can be justified only by a compelling state interest. *N.A.A.C.P. v. Button*, 371 U.S. 415, 438, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963).

In the case at bar, the Commonwealth undeniably has a compelling interest: preservation of the integrity of the

electoral process by reducing the chance that last-minute misleading, false, or scandalous campaign claims will go unrebutted and improperly sway the result of an election. Moreover, in many respects the statute only narrowly restricts speech. The statute does not constitute a prior restraint, *cf. Near v. Minnesota*, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931), for it is not an absolute pre-publication prohibition of advertising. At least on its face, the statute does not prohibit advertising at all; rather, since it only imposes a notice requirement, it is a kind of time, place, and manner restraint. *Cf. Cox v. New Hampshire*, 312 U.S. 569, 61 S.Ct. 762, 85 L.Ed. 1049 (1941). Nor is there any suggestion that candidates' ads are subject to the approval of the Commissioner of Elections, with the result that they would be subject to a form of censorship. *Cf. Lovell v. Griffin*, 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949 (1938).

Having recognized these favorable aspects of the statute, however, I nonetheless conclude that it violates the First Amendment.

As a preliminary matter, it is worth noting that it is far from clear that it is within the state's power to regulate speech at all in this area. In *Mills v. Alabama, supra,* the Supreme Court held unconstitutional an Alabama statute that prohibited newspapers from publishing election day editorials urging voters to vote in a particular way. Although it did not explicitly discuss the point, the Court seemed to assume that no state interest could justify the state's abridgement of speech at a crucial stage in a political campaign.[1] Assuming, however, that the state does have power to regulate speech in this area, the statute is deficient on two grounds.

First, although the statute does not on its face prohibit speech, in certain instances it will operate to bar completely

1. After noting the state's asserted interest in protecting the electoral process, the Court prefaced its holding with the *caveat, ". . . even if [this argument] were relevant to the constitutionality of the law . . ."* 384 U.S. at 220, 86 S.Ct. at 1437. The permissibility of state regulation in this area would therefore at best seem to be problematic.

the placement of ads. In situations where candidates cannot give their opponents notice in time enough to allow for a reply, they must either forgo placement of an ad or face possible criminal penalties. Thus, relevant information discovered in the final days of a campaign may be prevented by the statute from reaching the voters. Conceivably, by employing a balancing test this "incidental" restriction of information might be outweighed by the Commonwealth's interest in protecting the integrity of the electoral process. However, in the context of an election campaign, the Commonwealth has a legitimate interest only in the regulation of false, misleading, or scandalous speech—speech that is likely to undermine the integrity of an election. Last-minute ads that are not misleading, but truthful and informative, do not threaten the democratic process. On the contrary, such ads enhance the democratic process, and the Commonwealth has no interest sufficient to justify their suppression. It follows that the statute is overbroad. It abridges speech by suppressing in certain instances the dissemination of the truth. *See N.A.A.C.P. v. Alabama ex rel. Flowers*, 377 U.S. 288, 307, 84 S.Ct. 1302, 12 L.Ed.2d 325 (1964); *Cantwell v. Connecticut*, 310 U.S. 296, 304, 60 S.Ct. 900, 84 L.Ed. 1213 (1940).

Second, the statute suffers from the same flaw that invalidated the statute in *Mills v. Alabama, supra.*

In *Mills*, Alabama, ostensibly in order to prevent the making of irrefutable, last-minute charges in election campaigns, prohibited the publication on election day of editorials urging voters to vote a particular way. The Supreme Court ruled that even if it assumed that the statute had a permissible purpose, the statute was nonetheless unconstitutional because it abridged speech without fulfilling the state's purpose. Specifically, the Court found that the statute failed to meet its goal of protecting the electorate from "confusive last-minute charges and countercharges" because it allowed the making of such charges *until* election day, but then imposed criminal penalties on anyone who attempted to refute such charges *on* election day. 384 U.S. 220, 86 S.Ct.

1434. Thus the Court established a test of effectiveness: a state's abridgement of speech is not lawful merely because the state hopes thereby to foster some legitimate interest; rather, the abridgement must in fact further a legitimate interest. This test is a specific application of the general principle that a state's interference with speech must be *necessary* to further a compelling state interest. *United States v. O'Brien*, 391 U.S. 367, 377, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968).

The statute here fails to pass the *Mills* test of effectiveness. The notice requirement of the statute has been construed not to apply to "reply" ads under the act.[2] Thus, if candidate A is running against candidate B, and A sends B notice that he is placing an ad within the final two days of the campaign, B is not required to notify A of his reply to A's ad. Thus the statute gives B *carte blanche* to engage in misleading campaigning. The statute in effect confers a strategic advantage on the unscrupulous candidate, because it supplies him with advance notice of his opponent's end-of-campaign advertising strategy, without subjecting him to a similar notice requirement.

This difficulty may not be avoided by holding that those portions of "reply" ads that raise new matter or in some way go beyond the proper scope of a reply are subject to the notice requirement of the statute, for then candidates would be chilled in the exercise of their First Amendment rights. There could be no clear boundary to mark what would be considered a reply ad, and what would be considered as more than a reply and so subject to the notice requirement. If, for instance, A gives notice and places an ad attacking B's integrity, and B replies not by defending himself but by launching a counterattack on A's integrity, is this a reply ad that is exempt from the notice requirement, or must B notify A of his ad? More to the point, how is B to determine

2. In *Commonwealth v. Suplee*, 255 Pa.Super. 351, 387 A.2d 85 (1978) we noted that to require replying candidates to give notice of their ads would result in an infinite series of notices and counternotices under the statute, and that the legislature did not intend such an absurd and unwieldly system.

64

whether his ad is subject to the notice requirement? Plainly, candidates would not be able to predict with certainty how their ads would be viewed, and thus would be constrained to act cautiously in drafting replies lest they expose themselves to criminal penalties for failure to give notice. It is indisputable that an abridgement of speech caused by fear of sanctions is as violative of the First Amendment as an abridgement caused by application of the sanctions. *N.A.A.C.P. v. Button, supra,* 371 U.S. at 433, 83 S.Ct. 328; see *Keyishian v. Board of Regents of New York,* 385 U.S. 589, 604, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967); *Speiser v. Randall,* 357 U.S. 513, 526, 78 S.Ct. 1332, 2 L.Ed.2d 1460 (1958).

I would reverse the court below.